The next case for argument is 161402 In Re Apple. May it please the court, my name is Bill Lay and together with my partner Dominic Moss I represent Apple. Throughout these proceedings the patent office identified claim construction as, and I quote, the principal issue. We agree. Claim construction in two respects is the critical issue on this appeal. And more specifically the critical issue is whether the standard is the broadest reasonable interpretation or simply the broadest interpretation. There are two. Let me go immediately to the first, which is the two or more issue that is before you. The board very narrowly focused on the word or in two or more almost in isolation. But the word or has a meaning in context and if I could take the panel to claim one of the patent. Just so we're clear, you agree that Nomura and Hollis both show distinguishing between use of a single input for scrolling and the use of two inputs for gesture, right? No, I don't think so, your honor. Nomura distinguishes two inputs as a gesture and says nothing about any other inputs at all. It's a map application and for that reason it makes some common sense that two inputs would be a gesture. It says it's silent as the others and the patent office has assumed that a scroll would be one. But is there a question? Are you arguing that under the patent office's claim construction that you win? No. If the patent office's claim construction is correct, we do not win. We, in order for us to win, we need to, on the two different issues, we need to convince you that our claim construction is correct and in fact under that claim construction actually neither Nomura nor Hollis would satisfy the limitation to claim and there'd be nothing before the patent office. I think, your honor, the way we can best demonstrate to you that ours is correct is by looking at claim one because the two or more is in the context of claim one. If you were to look at claim one, it begins a couple of limitations above the two or more and it begins with the method involving the receiving of, and I quote, one or more inputs. So the universe is one or more inputs. Then the claims take it to two critical steps and what it does is it divides the world, these one or more inputs, into two categories. And the purpose of the two categories is to determine, do you have a scroll or a gesture? And everything falls into one of the two categories, you're a scroll or a gesture. And then the claim says, here's how you determine that. You distinguish between a single input or two or more. Actually it says a single input and two or more. So the structure of the claim, and there's a little bit more that I'll get to in a second, is to define the universe of all the potential inputs. If the prior art distinguishes between one and two, as between scrolling and gesture, what is the significance of the treatment of a third input, one way or the other? Your Honor, the significance is that if the patent claims are read and the specification is read and you particularly consider the purpose of the invention, the purpose is to distinguish between one input and everything else.  Well, that's what you say, but what is the benefit of distinguishing between, if you can distinguish between one and two, what's the additional benefit of distinguishing between one and three? It's a very good question, Your Honor, and the specification answers that at column one. And I think this is a place where it's important to recognize that. But what's the benefit? The benefit is that, and if I could go to column one at line 48-52, what the patent says, and it's important, I think, to go back in time to the time of the invention, January 2007. And the patent says, here's the benefit. We're now dealing with devices like smartphone. Now, this was filed just before the iPhone was publicly announced. And unlike prior devices, the specification says, and again I'm quoting, there is a limited display size, user interface software, API interface, and or processing capability. So the patent explicitly says for these smaller devices, there is less device space, there are constraints in hardware, there are constraints in software. And then it goes on to say, as a consequence for these devices, and again I'm quoting from column one, there is difficulty interpreting the various types of user inputs and providing the intended functionality. So the algorithm, or the method to describe which divides the world into one input on the one hand, all other inputs on the other, gives you a very simple, very elegant algorithm and method to distinguish between the two. I'm not sure that really answers my question. If the prior can distinguish between one and two, what's the additional benefit of being able to distinguish between one and three? It is the simplicity of the algorithm that lets you distinguish between one, which is a scroll, and two, three, four, five, which can be a gesture. And the benefit of that is that it allows you to take one input and put it in one category and get the benefit of that. And take the others, recognize them all as gestures, and put them in the second category. And I think, Your Honor, this is the key dispute between us on claim construction. And I don't think the Patent Office's claim construction fits within the claim or as the specification describes you mentioned. Let me say why. I'd like to ask you some questions about the specification. I see where you're pointing to in Column 1, but some of that is not so explicit in Column 1. I don't see anything in here that says specifically wraps it up with a bow, as you did in saying you want to have this simple rule. So am I missing something? Yes. For example, this section here that you're referring to in Column 1, lines 48 through 55, doesn't even refer to scrolling or gesturing. Actually, scrolling or gesturing is immediately the paragraph above. So I think that if we go to that column... Am I correct, though, in understanding there's other types of things that are being disclosed in this specification? For example, animation somehow. There's several different embodiments in here, right? There's things about bouncing and animation. Yeah, there's rubber banding, which I'll come to as there's time. There is animation, which is not relevant to this appeal. But if you look at Column 1, immediately before the portion that I identified, there's a discussion of scrolling and gesturing. And this is important because what the patent is saying is, this is something that you want to do. You want to be able to recognize a scroll. You want to be able to recognize a gesture. Well, it certainly says that, but it doesn't suggest that it's important to distinguish between 1 and 3 and 1 and 4. What it talks about is being able to distinguish between a scroll and a gesture. And that purpose of the invention is satisfied if you can distinguish between 1 and 2, isn't it? Yeah, Your Honor, I'm with you all the way up to the conclusion. And the conclusion, which is the invention is satisfied by distinguishing between 1 and 2, would not be correct. And I think, if I can go back to Judge Stoll's question, which in part answered yours, is that if you look at the specification that follows when you get to the specific description of the invention itself, it tells us a couple of very important things. So Figure 1 helps amplify. And actually, Figure 1 describes what's happening in the claim. But the specification consistently describes a single touch as a scroll. It also describes a single touch as having an angle, a singular angle. And it also describes it as having a singular speed. So to go to the conclusion of Judge Dyke's question, the specification tells you when you have a singular angle or you have a singular speed, we want to know that it's a scroll. And it is. And then it says, if you have two or more points, to go to Judge Dyke's question, they are gestures. And there are a dozen times where the phrase two or more gestures, two or more input points is used to describe a gesture. And then there's more. In both the claims and the specification, the word two or more or the phrase two or more is used interchangeably with a plurality. What about column 12 lines, I think it's 29 to 34, where it says, in certain embodiments, a user input in the form of two or more points is received by the display device. And then it says a multi-touch driver receives the user input. And then the Windows server sees the event and determines whether the event object is a gesture. Why in any circumstance, if it receives two or more, would it determine if it's a gesture if two or more is always a gesture? Your Honor, this portion of the specification at the bottom of column 12 and the top of column 13 is after the point where there's been a recognition of whether it's a single input point or multiple input points. And you're moving to doing the event object. So if I can bring it back to figure one, I think I can demonstrate that if you look at after you hit the third step and you move to the fourth and fifth, where you create the event object, that's what's being discussed at those portions of the specification, which they would have to discuss in order to provide a disclosure that would be sufficient. And how does that suggest that distinguishing between one and two isn't sufficient to satisfy the claim? That's what seems to me missing here. Your Honor, if the claim is read and you look at two or more and the specification is read, which consistently distinguishes between one and two or more, and then we actually look at the testimony of the three expert witnesses who testified unanimously, and we think about what's at column one. You're looking for a simple, elegant, efficient, and effective method. And the simple, elegant, effective, and efficient method is if it's one, we put it in category A. If it's in two, you put it in category B. An algorithm that would satisfy your hypothetical, which would be one-touch scroll, two-touches gesture, three-touches scroll, four-touches gesture, would neither be simple nor elegant nor would it satisfy the real purposes of this claim. And that's why two or more... I don't know whether Judge Stoll has more questions on this, but I did want to get to rubber banding. I just wanted to ask you, in figure one, in step 100, it says the user input can be in the form of an input key button, wheel, touch, or other means of interacting with the device. So, I mean, it seems as if figure one maybe isn't complete because not all of those things would be a scroll or a gesture. If you took figure one, I think receiving a user input... And if we set aside animations for a second and you look at claim one, you have the universe, which is one or more inputs. That's the universe. And then it says we divide that universe into either a single input or two or more. So if you receive that user input at 102, that's the first part of the claim that I was identifying. Then you're creating an event object in response to the user input. So that's where the determining and distinguishing step become important. You determine whether you need a scroll event object or a gesture event object. How do you determine that? Determinant claim tells us by distinguishing one and two. And this is where I think the narrow focus on or by the patent office, two or more, is one input and two or more. That's the phrase. And that actually, for me, answers Judge Dyke's question. It's on the one hand, one. And on the other hand, it's two or more. It's two, three, four, five. And I think if I were to take the example that I started to answer Judge Dyke's question with, which is if you had one was a scroll, two was gesture, three was a scroll, four was a gesture, five was a scroll, that's what the PTO's instruction would allow you to have. Ours is, if it's one, it's a scroll. If it's anything more than one, it's a gesture. That fits with what the claim says, the specification says, and the purpose of the invention. And I'll answer the question of rubber banding. Okay, I think your argument has forced that rubber banding suggests snap back rather than snapping forward. Let's assume that you're correct about that. But on the other hand, if you look at the examiner's answer, which is what the board relied on here, the examiner discusses LERA and explicitly states this is at 843 and 844 of the appendix. Specifically, he says that LERA teaches a situation where if you go beyond the edge of the column, and you stop, and it snaps back. So why isn't that analysis by the examiner an alternative ground here for finding obviousness as to this limitation over LERA? If I could, I know I'm way on my time, but for three reasons. One is, and the first may be not a predicate of your question. The examiner started with a proposition that rubber banding under the claims doesn't have any direct limitations. So let's set that aside. Because he goes on and pretty clearly talks about the fact that LERA, if you go beyond the column and you pick up your finger even so far as you haven't gone too far, it'll snap back. That's not what's described in the claim. And the PTO actually has conceded that. If you take our interpretation, which you need to go in this direction, then when you go too far, you get, let's go as figure 6a and 6b. If you go in this direction, and you've gone beyond the document, you'll see some white space. Then you'll snap back. That's not what LERA does. LERA snaps you forward. No, it also snaps back. That's absolutely clear from LERA itself and from the examiner's answer. You are correct that if you go too far, it will snap forward. But if you don't go too far, even if you move your finger over the edge of the column in LERA and then remove your finger, it snaps back. That's not what the rubber banding is described. But that's correct. But it snaps back, right? If you're partway through the document, it will come back some. Not even the PTO says that that satisfies. Just to be clear, we're on the same page, so to speak, as to what LERA teaches. LERA teaches that if you go beyond the edge of the column, and the examiner says edge of the column satisfies the claim limitation of edge, if you go beyond the edge of the column, as long as you don't go too far beyond the edge of the column, it will snap back rather than snap forward. I don't think I agree with the predicate, because the rubber banding that's described in the 915 patent is you're scrolling beyond the display edge of the document, and then it snaps back. And in LERA, if you scroll beyond the edge of the document, you snap forward. And we both agree with that. Take 844. The examiner says when the user scrolling does not exceed the threshold, the column is recentered and snapped back into alignment. So it does teach a snap back feature. Let me just get to the page, because I think I know exactly what you're talking about. 844. And you're at? Right after the block quote. The sentence after the block quote. It says when the user scrolling does not exceed the threshold, the column is recentered and snapped back into alignment. Yeah, Your Honor, we're talking about two different things. They're talking about something that is aligning things with the display window. So there is part of LERA that when you're scrolling vertically and there's wobbling in a horizontal direction, it will come back. I understand the wobbling thing, but this isn't talking about the wobbling thing. Yeah, I think it actually is, Your Honor. When the user scrolling does not exceed the threshold, the column is recentered, right? That's, I think, talking about the two things here that are being discussed in these two paragraphs. One is this horizontal balancing. But if that's not what you're talking about, then the key here is when the user scrolling does not exceed the threshold. Just accept my premise. I understand you disagree with it, but accept my premise that LERA shows snapping back. When you go beyond the edge of the column, and as long as you don't go too far, you lift your finger up and it snaps back. Why wouldn't that be a disclosure of this feature? Your Honor, if... If, in fact, it teaches that. I understand you disagree that it teaches that. If LERA or any prior art disclosed that when you went beyond the document and you were beyond the threshold and you snapped back, then that would be a problem for us. The best indication that that's not what the examiner is saying is that if you go on to what the examiner says in the next few pages, he says, well, yes, LERA goes in the direction of the document and it snaps forward. But it would have been obvious to want to board a skill in the art to modify that to snap back. And there's nothing cited for that proposition. Now, if the examiner was reading LERA in the same manner that you and I have been discussing or you've described, he never would have had to say that. It would have been... It satisfies this limitation. And I'm well over my time, so... Thank you. Thank you. Will we start two minutes of rebuttal? May it please the Court. So the concept in Claim 1, the Method Claim 1, of associating user input... Sure. So the examiner cited... Let's assume that we reject the board's construction, which says that rubber banding includes snapping forward and that that's wrong. It has to snap back. Does LERA show snapping back? It does, Your Honor. And Your Honor was on the relevant portion of the examiner's answer where he makes the observations and makes the findings about LERA at 476 to 4... And this particular analysis of LERA was adopted expressly by the board in its rehearing decision, Appendix 19. And here the examiner is citing to a portion of LERA that is part of LERA's disclosure of what LERA terms vertical alignment control. And that's at pages 476 to 477 of LERA and figures 14a and 14b of LERA where it's talking about it. And he actually has two sort of embodiments of vertical alignment control. The first one is the wobble, where the user is scrolling with a pen, a stylus in the particular embodiment, and it's moving down... It's moving vertically, but there's horizontal deviations. And what LERA teaches is we want to sort of account for that, keep the column aligned, and so we keep it centered. Then the second one is this idea of snapping back, whereas if the user... We're going to set a threshold. The user can set the threshold, turn it off. We're going to account for deviations in the user's vertical, in this case downwards, scrolling motion, left or right, and decide what it is that the user wants to do. And we're either going to snap it back or we're going to snap it to the side. So there at pages 843 to 844 and 842 as well, the examiner is finding that LERA teaches this idea of snapping back. And perhaps even more importantly, to the extent that there's any debate about the particular direction that LERA is moving his content, depending on whether thresholds are exceeded or not, the examiner made the observation, the finding at 845 to 846, that sort of the direction that this content is going to move would have been well within the ordinary skill in the art to pick. So LERA both expressly teaches the rubber banding concept reflected in claim two, as well as made sort of the additional finding that it would have been with the artisan skill sort of account for that. And it's sensical. I mean, as we pointed out in our brief, there's only so many ways that the content can move. LERA is clearly directed at sort of the same problem that the rubber banding claim is directed to. This idea of these deviations in the scrolling direction are unwanted. And we have to figure out whether the user actually wants to do something with it or whether or not he's just not paying attention. So that's what LERA is talking about at 843, or sorry, 476 to 477. So the rubber banding limitation is disclosed even under their interpretation, which, of course, we would disagree that the particular embodiment in the 915 patent, where it shows email scrolling up and then snapping downward, actually limits this claim. But to the extent that this court feels like that is the proper limiting narrower construction, LERA would meet it. We discussed this in our brief expressly, starting at pages 51 and going on through 52 and 53. So if there are no further questions about rubber banding, we'll turn to Claim 1. So the concept in Claim 1 of associating user input numbers with particular operations on the screen is what Hillis and Nomura are, at some level, all about. Hillis and Nomura disclose other stuff. But Hillis and Nomura are very clearly recognizing the same problem that my friend Mr. Lee directed you to in the 915 patent, this idea of increased functionality on user devices where they're using a touchscreen. If we look at, for example, appendix page 540, which is in the Hillis patent, Hillis says at lines 59 to 61, in discussing the limitations of the prior art, he says, although the foregoing approaches will always enjoy some popularity, the present inventors have sought ways to improve the interface between human and computers. And his disclosure goes on, he's very clearly focused on this idea of we need to figure out when a user puts his finger or fingers on the screen, what is it that they want us to do or not do? And at appendix 542, starting at roughly lines 49, when Hillis starts to get into what his invention actually is, he's making very clear. He says, in reference to figure 2a, 2a shows a sequence to detect and analyze contact points, history, velocity, applied force, to recognize user application of predefined touch-based user gestures, and thereafter implement predetermined actions associated with the gesture. He's teaching exactly the same concept in response to exactly the same problem as the 915 patent. Nomura is the same. Nomura at appendix page 398 says, problem to be solved. Providing an electric book that achieves a favorable human interface with functions such as rotate, zoom in, zoom out, scroll, etc., of a map image that are easy to use, and a mobile information device and information storage media used for these. And then Nomura goes on to describe, particularly at appendix page 408 to 409, paragraphs 49 to 53, and this is in response to an earlier question about does Nomura teach scrolling in response to a single input? He most assuredly does. At paragraph 53, the text of which is on appendix page 409, he says in his last sentence, the operation details determination part 30, judges finger movement history detected by the finger movement detector of action of moving one finger as an input of a map scroll. This is exactly the same portion of Nomura that the examiner relied on, and that the board approved. So, I think under the reasonable interpretation that the PTO gave this claim, Hillis and Nomura meet it squarely. And in many ways, the disclosure of Hillis and the 915 patent are, I don't want to say identical, but in pertinent ways, very much on point. Hillis is clearly talking about this idea of you can have one input, and I want to scroll, and I can have fingertips, using the plural. I want to do things like zoom. Now, he depicts it using a two-finger input at figure 1B, but that is akin to the 915, the 915 patent. And it's all over the briefs, and we've heard it in the oral argument today, two or more or plurality. But that doesn't shed any light on whether or not the particular recitation in claim one requires all of the pluralities. It clearly encompasses where the single user input, which is all that's required by the method of claim one, is one finger or two. And the only examples we have of the 915 patent specification where a gesture, zooming, actually is invoked is using two fingers, which is exactly like Hillis. So the board's construction and the examiner's construction here is reasonable in light of that claim language, which uses the word or. They gave it the interpretation that this court has given very similar language in Schumer and the other cases that we've cited in our brief. And there's nothing in this patent that concretely says that that interpretation cannot be correct. If there are no further questions, I'll yield the remainder of my time. Thank you. Let me address issues in the order that Mr. McMahon has did. I'll go back to rubber banding because the PTO is talking about something different than what the claim requires. The claim requires, if you look at claim 16, this is one of the rubber banding claims, that the scrolling exceed the window edge. And what Mr. McManus has drawn your attention to on A843 at the bottom, and this is a portion that Judge Dyke and I discussed, if you look at the block quote, this is talking about a vertical alignment control. So this is when you're scrolling in the horizontal direction and you have some wobbling of the document or the thing that's on the screen, and you want to be sure it stays within the window. That's why if you go to A844 at the end of the block quote, it says, when the user's And that's the snapback portion you referred to. This is wholly different. In LIRA, when you're scrolling in the horizontal direction and you go beyond the threshold, you snap forward. There's no dispute about that. In the 915 patent, when you go beyond the threshold, you snap back. That's why it's called rubber banding. That's why the Patent Office started with the issue that Judge Dyke and I set aside, which is that rubber banding, as defined by the patent, has no directional meaning, and that's simply incorrect. If we say it has directional meaning and we look at the claim, which is what we have to do, the claim says, when the scrolling region exceeds a window edge, then you snap back. LIRA doesn't do that. That's why the examiner went and said, what if ordinary skill in the art would have modified it to snap back? But there's nothing to support that. If I then go to the substance of arguments that were made, as Mr. McManus made it, I think the first part of the argument was, under their claim interpretation, Hillis and Nomura would satisfy the limitation. We don't, as I said to Judge Dyke, we don't dispute that. The question is, what is correct claim interpretation? And let me just say one thing about that and then two things. One about Hillis, one about Nomura. The question before you is, is a correct claim interpretation one that would, choose my example, have one input be a scroll and any other number of inputs? Practically, it's going to be 10 or less, be a gesture. Or is it, did the inventors really intend that two or more, in the context of this claim, would allow you to have one as a scroll, two as a gesture, three as a gesture, four as a scroll, five as a gesture? It's not only the question of what the claim says, what the specification says, what the expert says. Common sense would say, that's not what they're trying to do. Now, if our claim interpretation is correct, the Patent Office concedes that Nomura does not satisfy the limitation. So we can set Nomura aside. As to Hillis and the argument that was made to you, that argument was not made by the board or the examiner below. There's no finding before you that if our claim interpretation is correct, that Hillis satisfies the limitation. And there's a really good reason why, and it's at page A543. Hillis is this big tabletop. It doesn't have the same constraints on limited display, doesn't have the same constraints on hardware, doesn't have the same constraints on software. And so what Hillis has, and it says so at A543, is a protocol where the system measures, as you put your finger or fingers down, the force with which you put it down, the velocity with which you put it down, the duration of time you put it down, and the direction in which you move. And then it compares that to a dictionary. And the dictionary says, well, if you started here and you ended there with this much force and this velocity, this looks like a scroll or a gesture. If you have a big tabletop display, you can afford to do that. You might have the room. Wouldn't one respond that even in your invention, there are secondary tasks that are done in order to distinguish a scroll and a gesture? I believe Dependent Claim 5 talks about one of them. Some of the dependent claims will actually talk about distinguishing gestures that are rotations or scaling. For sure, there are different types of gestures, and they're described in the specification. But just so every single one of them is a multi-input touch. There are none that are single-input touch, and there are no multiple-input touches that are gestures. So there are, for sure, different types of gestures. The dependent claims describe them. But that's what Hillis doesn't satisfy because what the claim says, and it is the simplicity of being able to do this on a small device. It is, use one finger, we know it's a scroll. Use anything more, we know it's a gesture. Hillis doesn't do that. It has a set of four or five different considerations that are detailed at the bottom of A543. And it says, you've got to compare them to a dictionary. That's the reason, and I think this actually may be the best resolution of it. If you consider... If, though, say it did distinguish between a scroll and a gesture based on, and it satisfied the two or more touches. You're not saying that it wouldn't be okay for Hillis to then continue to do other kinds of things because your claim is a comprising claim, right? That's correct. If you distinguish between a single input and multiple inputs, decided it was a scroll or a gesture, and then you did other things, that would be fine. Because you would have done the distinguishing, the determining. Final thought. Final thought. Very final thought. Let me just ask, when the panel considers the argument that was just made to you about Hillis, we'd ask you to consider page A17, which is where the board said for the very first time, well, the result might be the same under Apple's claim interpretation. If it did, Nomura would satisfy the limitation. Not Hillis, Nomura. Then we come before you, and we have the same argument, which is, if Apple's interpretation is correct, the Patent Office still wins, but this time it's not Nomura, it's Hillis. That can't be. And the answer is, neither does it. Thank you. Thank you.  The case is submitted. That concludes our proceedings. All rise.